**Patricia Tonye IKENI, aka Donna Lou Marwieh, Petitioner**

v.

**Michael B. MUKASEY,\* Attorney General, Respondent.**

**No. 04–71848.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 18, 2008.

Filed May 30, 2008.

\* Michael B. Mukasey is substituted for his predecessor, Peter D. Keisler, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Geri N. Kahn, V. Thomas Langford, Benicia, CA, for Petitioner.

Charles E. Canter, Alisa Kaufman, Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, Steven K. Sharpe, San Francisco, CA, for Respondent.

Before: NOONAN, W. FLETCHER, BEA, Circuit Judges.

## MEMORANDUM **

Patricia Ikeni, a native and citizen of Nigeria, petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") decision denying Ikeni's claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition and remand with instructions that Ikeni be given a new hearing.

The IJ found Ikeni was not credible, based primarily on Ikeni's failure credibly to establish her personal identity. During the hearing, however, the IJ erroneously excluded evidence submitted by Ikeni to establish her identity.

During the July 20, 1999 preliminary hearing, the IJ noted Ikeni's lack of documentation corroborating her identity. The government attorney suggested Ikeni could "get documents related to her employment ... establishing her identification because she worked at United Plastic Industries for seven years...." The IJ approved of this suggestion, stating: "That certainly is a very reasonable way to identify who she is and where she had been."

Accordingly, during her May 17, 2002 hearing before the IJ, Ikeni offered an employment letter from United Plastic Industries, a letter from the company's personnel manager, and an employee badge as proof of her identity. The government (now represented by a different attorney) objected to these documents for lack of authentication. The IJ responded she would give the documents "appropriate weight," later stating they "could not be consider[ed] personal identification document[s] unless and until [Ikeni] can explain what happened to [her] passport."

Although an IJ may deny an asylum application based on a finding that the petitioner's documentary evidence is not credible, the IJ must offer a "legitimate, articulable basis for the finding and a specific, cogent reason for any stated disbelief." *Lin v. Gonzales*, 434 F.3d 1158, 1162 (9th Cir.2006) (internal quotation marks and alterations omitted).

More specifically, an adverse credibility finding cannot rest on mere speculation

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

or conjecture, such as the IJ's bare subjective opinion about the authenticity or probity of documents. Rather, the record must include some "evidence undermining their reliability," such that a reviewing court can objectively verify whether the IJ has a legitimate basis to distrust the documents.

*Id.* (internal citations omitted).

■ Here, the IJ's "bait-and-switch" with respect to Ikeni's employment documents does not meet this standard. That Ikeni failed to produce a passport at the immigration hearing did nothing to undermine the reliability of the employment documents she submitted. As the IJ herself initially observed, these documents—absent a specific, cogent reason to doubt their reliability—provided a "very reasonable way to identify who she is[.]"

The IJ also refused to allow Mondy Gold, the Secretary General of the Ijaw National Congress, U.S.A., to testify either telephonically or via videoconference in support of Ikeni's asylum application, and further refused to admit two letters from Mr. Gold into evidence because he failed to appear in person at the hearing.[1] Ikeni's asylum claim is based on her Ijaw ethnicity and, more specifically, her claimed leadership role in the Ijaw Youth Movement. The IJ's refusal to allow Mr. Gold to testify limited Ikeni's ability both to prove her identity and to establish the reasonableness of her fear of future persecution as a member of the Ijaw Youth Movement. We have addressed similar refusals by IJs to allow telephonic testimony in two previous decisions. In both cases, we held the IJ erred in refusing to allow the telephonic testimony. *See Zolotukhin v. Gonzales,* 417 F.3d 1073, 1076 (9th Cir.2005); *Biggs*

*v. INS,* 55 F.3d 1398, 1401–02 (9th Cir. 1995).

Ikeni also submitted a Nigerian "Statutory Declaration of Age" as corroborating evidence of her identity. The government objected to the admission of this document based on lack of authentication, contending the document must be authenticated by a stamp of a foreign service officer of the United States located in Nigeria. The IJ agreed, stating "the Government have properly stated their objection, and the reasoning is correct," and concluding she would give the document its "appropriate weight," which "would be none[.]"

■ We have held, however, it is error to exclude official records from another country based solely on the lack of consular certification. *Vatyan v. Mukasey,* 508 F.3d 1179, 1181 (9th Cir.2007). A petitioner may authenticate a foreign document through "any recognized procedure for authentication of documents in general," including the petitioner's own testimony. *Id.* at 1183. Thus, to the extent the IJ relied on lack of consular certification alone in refusing to consider the Statutory Declaration of Age, this was error.

In sum, we hold the IJ erroneously prevented Ikeni from presenting evidence to establish her identity. The IJ's error was not harmless. *See Vatyan,* 508 F.3d at 1185. Accordingly, we grant Ikeni's petition for review with instructions that she be given a new hearing in front of a different IJ to ensure she has an opportunity to establish her identity. After assessing the evidence, the IJ at this new hearing is free to make whatever decision (including an adverse credibility determination) he or

---

1. Mr. Gold's letters described conditions in Nigeria, and stated that Ikeni was of Ijaw ethnicity, was a member of the Ijaw Youth Movement, and would be in grave danger if she returned to Nigeria. At the time of the hearing, Mr. Gold lived in New York. The hearing was in San Francisco, California. Mr. Gold submitted a signed statement asserting "[b]ecause of the distance, I am available to testify ... by telephone only[.]"

she determines is warranted by the record.[2]

**PETITION GRANTED; REMANDED with instructions.**

---

**2.** Because we remand for a new hearing on the ground discussed, we need not and do not reach the other grounds of error raised by Ikeni on appeal.

