NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 3 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RODOLFO PENA ESTRADA,

      Petitioner,

  v.

TODD BLANCHE, Acting Attorney
General,

      Respondent.

No. 25-2988

Agency No.
A203-598-137

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 13, 2026
Pasadena, California

Before: PAEZ, CALLAHAN, and BUMATAY, Circuit Judges;
Dissent by Judge Paez.

    Petitioner Rodolfo Pena Estrada ("Pena"), a native and citizen of Cuba,

petitions for review of a decision of the Board of Immigration Appeals ("BIA")

dismissing his appeal from an order of an Immigration Judge ("IJ") finding him not

credible and denying asylum, withholding of removal, and protection under the

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C.

§ 1252(a) and we deny the petition for review.

We review the BIA's legal conclusions de novo, *Bringas-Rodriguez v.*

*Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc), and its factual findings

for substantial evidence, *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir.

2022). We must uphold the BIA's factual determination "unless the record

compels a contrary conclusion." *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir.

2020). Where the BIA conducts its own review, our "review is limited to the

BIA's decision, except to the extent that the IJ's opinion is expressly adopted."

*Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020) (internal quotation marks and

citation omitted).

Read broadly, Pena raises two arguments on appeal. First, Pena argues that

his due process rights were violated when an IJ, who did not preside over his

hearing, found him not credible based on a review of the hearing transcripts alone.[1]

---

[1] At oral argument Petitioner was asked to clarify the parameters of this argument. Oral Argument at 1:53. Petitioner stated that he is raising "a constitutional due process argument, that is subsumed within the credibility . . . standard." *Id.* at 2:08-2:17. Petitioner later confirmed that he is raising a constitutional due process challenge, not a statutory challenge that the proceedings violated the REAL ID Act. *Id.* at 3:26-4:33. Because the dissent's position rests on an alleged violation of the REAL ID Act, an argument not raised by Petitioner, we decline to address it here. *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 740 n.24 (9th Cir. 2016) ("We generally do not reach issues that the parties have not raised.").

Second and relatedly, Pena argues that the IJ's adverse credibility determination was erroneous and not supported by substantial evidence.

1. A due process challenge in an immigration proceeding is reviewed de novo. *Zetino v. Holder*, 622 F.3d 1007, 1011–12 (9th Cir. 2010) (citing *Padilla v. Ashcroft*, 334 F.3d 921, 923 (9th Cir. 2003)). We have long held that "[i]mmigration proceedings, although not subject to the full range of constitutional protections, must conform to the Fifth Amendment's requirement of due process." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005) (as amended). To establish a due process violation a petitioner must show that "(1) the proceeding was so fundamentally unfair that [he] was prevented from reasonably presenting his case, and (2) [he was] prejudice[d], which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006) (internal quotation marks and citation omitted). A petitioner "bears the burden of proving the alleged violation prejudiced his or her interests." *Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011). Prejudice is shown where the violation may have affected the outcome of the proceedings. *Flores-Rodriguez v. Garland*, 8 F.4th 1108, 1113 (9th Cir. 2021).

Pena fails to establish prejudice. To establish prejudice, Pena had to demonstrate that if the IJ had observed his testimony, rather than only reviewed the transcripts of his testimony, the IJ may have found him credible. Pena, however,

3                                                    25-2988

makes no such showing. Indeed, Pena's brief makes no prejudice argument and as Pena's counsel conceded at oral argument, his brief does not even mention the word "prejudice." Oral Argument at 29:17. This dooms his due process challenge. *See Rodriguez-Jimenez v. Garland*, 20 F.4th 434, 441 (9th Cir. 2021), *overruled on other grounds by Alam v. Garland*, 11 F.4th 1133 (9th Cir. 2021) (en banc) ("Because [petitioner] does not establish any prejudice from the alleged BIA errors, his due process claim fails.").

But even looking past Pena's failure to argue prejudice, a review of the record reveals little in the way of prejudice. The IJ found Pena not credible because his statements were vague, nonspecific, speculative, and he was non-responsive to questions. These determinations were based on the substance of Pena's responses, not observable characteristics. We see no reason why the IJ may have come to a different conclusion about credibility had the IJ observed Pena's testimony. Moreover, it is unclear how live testimony, as opposed to record review of that testimony, would have made the substance of Pena's responses less vague, more specific, or less speculative; or made his answers more responsive. Ultimately, because Pena fails to articulate any prejudice and the record shows none, his due process claim fails. *See Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 894 (9th Cir. 2018) ("Because Petitioners do not show prejudice, [their due process] claim fails."). Because Pena fails to establish prejudice, we need not and

do not reach the issue of whether the proceeding was so fundamentally unfair that Pena was prevented from reasonably presenting his case.

2. We review adverse credibility findings under the substantial evidence standard. *Yali Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017). "Under the REAL ID Act, an applicant for relief is not presumed credible, and the IJ is authorized to base an adverse credibility determination on the totality of the circumstances and all relevant factors." *Iman v. Barr*, 972 F.3d 1058, 1064 (9th Cir. 2020) (internal quotation marks and citations omitted). In its totality of the circumstances review "an IJ should discuss which statutory factors, including but not limited to demeanor, candor, responsiveness, plausibility, inconsistency, inaccuracy, and falsehood, form the basis of the adverse credibility determination." *Lalayan v. Garland*, 4 F.4th 822, 833 (9th Cir. 2021) (citing *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010)); *see also* 8 U.S.C. § 1158(b)(1)(B)(iii).

Here, the IJ found that Pena was not credible because his statements were vague, nonspecific, and speculative; and he was nonresponsive to questions. The BIA adopted these findings in its decision affirming the IJ. We have recognized that the level of specificity in an applicant's testimony is an appropriate consideration when assessing credibility. *See Iman*, 972 F.3d at 1065 ("The lack of detail in an applicant's testimony can be a relevant factor for assessing credibility."). The IJ pointed to several areas where Pena's testimony was vague,

lacked specificity, and was speculative, including Pena's testimony that he did not know when he left dental school, his vague descriptions of his anti-government activities, and his lack of detail and speculation about the motorcycle incident and his interaction with a woman who allegedly worked for the Cuban government. These findings are all supported by the record and are thus supported by substantial evidence.

We have also recognized that "the agency may base an adverse credibility determination on an applicant's unresponsiveness." *Id*. But "[t]o support an adverse credibility determination based on unresponsiveness, the [agency] must identify particular instances in the record where the petitioner refused to answer questions asked of him." *Lalayan*, 4 F.4th at 839 (internal quotation marks and citation omitted). Here, the IJ first identified Pena's testimony about the motorcycle incident and found that Pena continually failed to respond to the question posed to him about the details of this event. The IJ next identified Pena's testimony regarding his interview with the DHS officer, noting that Pena was asked four times why he did not tell the officer that he was threatened in Cuba and nonetheless failed to respond to the question. These findings are also supported by the record and are thus supported by substantial evidence.

**PETITION FOR REVIEW DENIED.**

*Pena Estrada v. Blanche*, No. 25-2988

PAEZ, Circuit Judge, dissenting:

I respectfully dissent. In my view, the REAL ID Act and the Due Process Clause of the Fifth Amendment prohibited the Immigration Judge ("IJ") from making an adverse credibility determination based solely on a cold transcript. The IJ's determination was based on perceived vagueness and unresponsiveness in Pena's testimony. But Pena's demeanor—inaccessible to the IJ—was a relevant factor and part of the totality of circumstances that the IJ was required to consider.

The REAL ID Act clarified, among other matters, the process by which an IJ may reach an adverse credibility determination in an asylum case. It provides:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness . . . or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

We have held that this provision amounts to a mandatory command: "an adverse credibility determination *must* be made after considering 'the totality of circumstances, and all relevant factors.'" *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010) (emphasis added) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). For instance, because the IJ *must* consider the "totality of the circumstances," the IJ may not "cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Id.* The failure to abide by this mandatory

statutory command also violates due process. *See Oshodi v. Holder*, 729 F.3d 883, 891–93 (9th Cir. 2013) (en banc).

Here, the IJ found Pena not credible based only on the transcript of a hearing before a different IJ. The IJ found that Pena's answers in the transcript were "vague" and "nonresponsive." But Pena's live demeanor was a "relevant factor," and part of the "totality of the circumstances," that the IJ had to consider before reaching this determination. 8 U.S.C. § 1158(b)(1)(B)(iii). Precedent and intuition so confirm. In *Oshodi*, an en banc panel of this court held that the IJ violated Oshodi's due process rights by cutting off his live testimony. 729 F.3d at 885. The IJ could not have "properly" judged Oshodi's credibility, within the bounds of due process and the text of the REAL ID Act, because he "restricted the evidence, especially the evidence *most relevant to credibility*, such as *demeanor*." *Id.* at 893 (emphasis added).

Pena's demeanor was particularly relevant to his credibility because he struggled to communicate through his interpreter, whose command of the English language appears to have been weak. An applicant struggling to communicate through an interpreter may appear vague and unresponsive on a cold transcript, regardless of whether they are honest or lying. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 662 (9th Cir. 2003). But an IJ observing in-person testimony might rely on trustworthy demeanor—e.g., strong eye contact and a confident, firm manner

2

of testifying—to look past translation difficulties, just as an IJ might rely on untrustworthy demeanor to reach the opposite conclusion. *See id.*

Moreover, because Pena's demeanor might have helped (or hurt) his credibility, the IJ could not refuse to consider demeanor while focusing instead on "factors weighing against his credibility." *Oshodi*, 729 F.3d at 893. By disclaiming the double-edged potential of demeanor, the majority ignores our precedents. *See Mendoza Manimbao*, 329 F.3d at 662 (one reviewing a cold transcript "is simply unable to distill the dynamics of an interview, observe whether words were interpreted properly, whether there was hesitation or whether the supposed inconsistency . . . was a matter of misinterpretation, confusion, or a true inconsistency").

Not only was the IJ required to consider Pena's demeanor, but the failure to do so undermined his adverse credibility determination. For example, the IJ found that Pena was nonresponsive in recounting an attack by drive-by motorcyclists, but the transcript of that exchange contains serious translation irregularities. Had the IJ viewed Pena testifying, he might not have faulted Pena for struggling to communicate through his interpreter. Indeed, the IJ who viewed the testimony declined to enter an adverse credibility determination at the hearing and instead found that the case merited further consideration.

3

True, Pena did not explicitly raise the issue of prejudice in his briefs. But the prejudice argument is clear. Pena argued that the IJ found him not credible based on a cold transcript and thus could not have made findings based on personal observation of his "tone, pauses, and body language." We may forgive Pena for not saying the obvious part out loud: had the IJ made such observations, he "*may have*" reached a different conclusion. *Oshodi*, 729 F.3d at 897 (original emphasis) (quoting *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005)). And, in any case, our precedents make clear that there will always be prejudice in a case such as this, where the IJ enters a dispositive adverse credibility determination based on perceived vagueness and unresponsiveness without considering demeanor. *See id.* at 896–97.

For those reasons, I would grant the petition for review and remand for the agency to decide whether to consider the remaining elements of Pena's asylum claim or provide him a new hearing.